J. S63039/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

TRACEY OSBORNE : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
v. :
:
WESLEY OSBORNE, : No. 553 WDA 2017
:
Appellant :


Appeal from the Order, March 13, 2017,
in the Court of Common Pleas of Lawrence County
Civil Division at No. 11099 of 2010 C.A.


BEFORE: BOWES, J., SOLANO, J., AND FORD ELLIOTT, P.J.E.


MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED DECEMBER 12, 2017**

Wesley Osborne ("Husband") appeals the order of the Court of Common Pleas of Lawrence County that found Husband in contempt of court and entered an award against Husband in favor of Tracey Osborne ("Wife") in the amount of $37,055.38, permitted Wife to reduce the award to judgment, ordered Husband to pay Wife the costs of reducing the monetary award to judgment and all reasonable attorney fees and costs necessary to collect on the judgment, sentenced husband to a term of 30 days in the Lawrence County Jail unless Husband paid the sum of $9,980.38 by April 13, 2017, and ordered Husband to pay each monthly alimony payment and each payment when due on the First Commonwealth Bank commercial loan. The trial court also ordered that failure to make payments as they come due on

alimony and the bank loan could result in additional contempt findings and orders. After careful review, we affirm.

The trial court set forth the following relevant findings of fact:

1. Testimony on the Petition for Contempt and Enforcement was closed on January 3, 2017.

2. On September 30, 2014, an Order of Court was entered equitably dividing the marital property and awarding alimony.

3. On June 16, 2015 an Order of Court was entered by Judge John Hodge. This Order was not appealed and became a final Order of Court. Therefore, all matters determined by the Court pursuant to the June 16, 2015 Order of Court are final and res judicata in so much as identical issues were raised in the current Contempt Petition.

4. The June 16, 2015 Order contained the following orders:

   a. That [H]usband pay [W]ife's attorney fees in the amount of $5,100.00 no later than June 30, 2015;

   b. That [H]usband pay $6,000.00 for back alimony from June 1, 2014 to June 1, 2015;

   c. That [H]usband continue to pay $500.00 per month from July 1, 2015 until May 31, 2022;

   d. "That [H]usband shall pay and provide proof of satisfaction of the First Commonwealth Commercial Loan, in keeping with the Court's Order of September 30, 2014 at paragraph 5."

e. That [H]usband return to [W]ife the following properties at a value that the Court included as follows:

Harley Davidson Sportster Motorcycle (during the Contempt proceedings now before the Court, [W]ife and [H]usband both agreed to a value for the Harley Davidson Sportster of $6,000.00)

$14,000.00 -- Mortisse 3 horse slant stock trailer

$75.00 -- portable welder

$1,500.00 -- Ford tractor

$200.00 -- Husqvarna rototiller

$200.00 --3 point hitch scraper blade

$600.00 -- bale chopper

$2,500.00 -- dump trailer, dual axle

$1,000.00 -- Stone water trough

$1,000.00 -- cut and spilt wood

Stove

Refrigerator

Washer and dryer.

5. [W]ife has paid $5,392.88 on the First Commonwealth loan that [H]usband was ordered to pay in the June 16, 2015 Order of Court. [H]usband in his brief has argued that the First Commonwealth loan was a loan that [W]ife was obligated to pay pursuant to the September 30, 2014 Order. That issue has already been determined by Judge Hodge's June 16, 2015 Order of Court and the issue is res judicata. [H]usband therefore is responsible for the payment of the First Commonwealth commercial loan and the payments by [W]ife must be reimbursed by

[H]usband. According to the documents provided to the Court pursuant to the Court Order of September 8, 2016, the First Commonwealth Bank loan is listed as account number [] and had an original balance of $50,000.00; with a balance as of August 2016 of $6,360.90. The total owed by [Husband] to [Wife] for monies she paid on the loan is $5,392.88. The remaining balance must still be paid by [Husband] to the First Commonwealth Bank.

6. After commencement of the contempt proceedings, and pursuant to the October 17, 2016 Order of Court, [H]usband was allowed to refinance one parcel of property and use the proceeds to pay $5,900.00 in attorney fees and $14,500.00 toward past due alimony. In addition, [W]ife's brief notes that [H]usband has since paid an additional $1,000.00 in alimony. Therefore, the attorney fees ordered by the June 16, 2015 Order of Court have been paid in full and $15,500.00 in alimony payments have been made for the period of time from 6/1/14 through the date of this Order.

7. The total amount of alimony that should have been paid for the period of time from 6/1/14 through 3/1/17 is as follows:

   a. Pursuant to the June 16, 2015 Order of Court alimony owed for the period from 6/1/14 to 6/1/15 is $6,000.00.

   b. Alimony owed from 7/1/15 to 3/1/17 at $500.00 per month, 21 months x $500.00 per month = $10,500.00.

      Total alimony due from 6/1/14 to 3/1/17: $16,500.00 ($6,000.00 + 10,500.00).

- 4 -

8. The total amount of alimony owed by [H]usband to [W]ife as of March 1, 2017 is as follows:

total alimony due from 6/1/14
to 3/1/17                                            $16,500.00

minus alimony paid                              - 15,500.00

alimony due and owing to [W]ife
from [H]usband as of 3/1/17              $ 1,000.00

9. [H]usband is in Contempt of Court for not returning to [W]ife the following items of personal property with values as already determined by the June 16, 2015 Order of Court or by stipulation of parties as to values:

Harley Davidson Sportster Motorcycle (during the Contempt proceedings now before the Court, [W]ife and [H]usband both agreed to a value for the Harley Davidson Sportster of $6,000.00)

$14,000.00 -- Mortisse 3 horse slant stock trailer

$75.00 -- portable welder

$1,500.00 -- Ford tractor

$200.00 -- Husqvarna rototiller

$200.00 -- 3 point hitch scraper blade

$600.00 -- bale chopper

$2,500.00 -- dump trailer, dual axle

$1,000.00 -- Stone water trough

$1,000.00 -- cut and split wood

Stove

Refrigerator

Washer and dryer.

> Total $27,075.00 (the Court has not assigned a value to the stove, refrigerator, washer or dryer as no testimony as to the value of those items has been produced.)
>
> 10. The Court finds that [H]usband had the ability to pay the sums of money due and the ability to return the items as ordered by the Court in the June 16, 2015 Order of Court and willfully failed to do so. [H]usband has available to him certain parcels of property, some of which were unencumbered and which had value sufficient to satisfy his obligations under the Court Order. [H]usband did not make a good faith effort to sell the properties. In one instance, a property appraised in 2010 with a value of $60,000.00 was offered for sale by [H]usband at $495,000.00.
>
> 11. [W]ife has incurred reasonable attorney fees in the amount of $3,587.50 (20.50 hrs x $175.00) in order to enforce the divorce settlement agreement and pursue the contempt proceedings against [H]usband.

Trial court findings of fact and order of court, 3/13/17 at 1-5.

Husband filed a notice of appeal. On April 12, 2017, the trial court directed Husband to file a statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b). On May 2, 2017, Husband filed his Rule 1925(b) statement. On June 6, 2017, the trial court issued an opinion pursuant to Rule 1925(a) which stated that Husband's issues were addressed in the findings of fact and order of court of March 13, 2017.

On appeal, Husband raises the following issues for this court's review:

> [1.] Whether the [trial c]ourt erred in finding [Husband] in Contempt of Court for violation of

the September 30, 2014 and June 16, 2015 Orders of Court?

[2.] Whether the [trial c]ourt erred in awarding [Wife] counsel fees?

[3.] Whether the [trial c]ourt erred in finding that [Husband] has the ability to pay the sums of money due and ability to return the items of personal property and that [Husband] willfully failed to do so?

[4.] Whether the [trial c]ourt erred in finding [Husband] responsible for payment of the First Commonwealth Commercial Loan and that payment by [Wife] must be reimbursed by [Husband] and that [Husband] must pay the remaining balance?

[5.] Whether the [trial c]ourt erred in sentencing [Husband] to a term of incarceration?

[6.] Whether the [trial c]ourt erred in finding [Husband] did not make a good faith effort to sell certain properties?

Husband's brief at 6.

This court's review of a civil contempt order is limited to a determination of whether the trial court abused its discretion. *Bold v. Bold*, 939 A.2d 892, 894-895 (Pa.Super. 2007). "If a trial court, in reaching its conclusion, overrides or misapplies the law or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record, then discretion is abused." *Gates v. Gates*, 967 A.2d 1024, 1028 (Pa.Super. 2009).

In order to establish that a party is in civil contempt, there must be proof by a preponderance of the evidence that the contemnor had notice of the specific order that he or she is alleged to have disobeyed, that the act that constituted the contemnor's violation was volitional, and that the contemnor acted with wrongful intent. *Harcar v. Harcar*, 982 A.2d 1230, 1235 (Pa.Super. 2009).

On July 20, 2016, Wife petitioned for contempt on the basis that Husband had failed to pay Wife $5,900 in attorney fees, failed to pay $500 per month in alimony, failed to return to Wife the personal property listed in the court orders of September 30, 2014, and June 16, 2015, and failed to provide satisfaction of the First Commonwealth Bank commercial loan.

Initially, Husband contends that the trial court erred in finding him in contempt for violating the September 30, 2014 and June 16, 2015 orders of court.[1] Husband acknowledges that he failed to comply with the court orders but asserts that the failure was not volitional and that he did not act with wrongful intent. Husband asserts that he does not have the present

---

[1] It is somewhat difficult to address the issues Husband raises because he has not complied with Rule 2119(a) of the Pennsylvania Rules of Appellate Procedure in that Husband has not divided the argument section of his brief into as many parts as there are questions to be argued and has not included headings to identify individual arguments. However, because this court can render meaningful appellate review, we will address the issues presented. *See Commonwealth v. Vealey*, 581 A.2d 217 (Pa.Super. 1990), *petition for allowance of appeal denied*, 592 A.2d 1300 (Pa. 1991).

ability to comply with the orders and that he attempted to do so. Husband argues that he has limited income that has prevented him from complying with the trial court's orders. He argues that his personal income is quite variable as he only averages between $24,000-$32,000 per year from his trapping business which is his sole source of income. (Notes of testimony, 9/8/16 at 65.) Appellant also testified that his storage business was operating at a loss. (*Id.* at 69.) Further, he asserts that he has attempted to liquidate all of his real estate holdings that are not tied into existing loans but has been unable to do so. (*See id.* at 50-63.)

However, the trial court found that the amount Husband owed to Wife was $37,055.38 which consisted of $1,000 in past due alimony payments, $27,075 in personal property, $5,392.88 for payments Wife made on the First Commonwealth Bank commercial loan, and $3,587.50 in attorney fees. The record reflects that Husband owns 11 different parcels of land. Some of these are owned with his parents, some are encumbered by loans, and some he owns free and clear. (*Id.* at 92-93.) The trial court determined that Husband did not make a good faith effort to sell the properties to satisfy his obligations to Wife. For example, one property was valued in a 2010 appraisal at $60,000, but Husband listed it for sale at $495,000. (*Id.* at 26.)

If the alleged contemnor is unable to perform and has in good faith attempted to comply with the court order, then contempt is not proven.

*Sinaiko v. Sinaiko*, 664 A.2d 1005, 1010 (Pa.Super. 1993). The contemnor has the burden to prove the affirmative defense that he lacks the ability to comply. *Commonwealth ex rel. Ermel v. Ermel*, 469 A.2d 682, 683 (Pa.Super. 1983). The defense of impossibility of performance is available to a party in a contempt proceeding if the impossibility to perform is not due to the actions of that party. *Commonwealth Dept. of Envtl. Resources v. Pennsylvania Power Co.*, 316 A.2d 96, 103 (Pa.Cmwlth. 1974).

Here, the trial court did not credit Husband's testimony that he did not have the present ability to comply with the earlier court orders. The trial court, as fact-finder, determines the credibility of any witnesses and the weight accorded their testimony. *Mescanti v. Mescanti*, 956 A.2d 1017, 1019-1020 (Pa.Super. 2008). Consequently, the record supports the trial court's factual determinations, and Husband failed to meet his burden.

Husband next contends that the trial court erred when it awarded Wife counsel fees because Husband lacked the ability to pay.

> Sanctions for civil contempt can be imposed for one or both of two purposes: to compel or coerce obedience to a court order and/or to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance with a court order. Attorney's fees and other disbursements necessitated by the contemnor's noncompliance may be recovered by the aggrieved party in a civil contempt case. Because an award of counsel fees is intended to reimburse an innocent litigant for expenses made necessary by the conduct of an opponent, it is coercive and compensatory, and not

- 10 -

> punitive, counsel fees are a proper element of a civil contempt order.

**Rhoades v. Pryce**, 874 A.2d 148, 152, (Pa.Super. 2003), **appeal denied**, 844 A.2d 1297 (Pa. 2004), quoting **Mrozek v. James**, 780 A.2d 670, 674 (Pa.Super. 2001).

Here, the trial court had the authority to award attorney fees. As we have already determined that the trial court did not abuse its discretion when it found that Husband had the ability to pay, his argument, that the trial court should not have awarded attorney's fees because he lacked the ability to pay, has no merit.

Appellant next contends that the trial court erred when it found that he had the ability to pay the sums of money due and the ability to return the items of personal property and that he willfully failed to do so. This court has already determined that the trial court did not err when it determined that he had the ability to pay. As to whether he had the ability to return the items of personal property, which made up the bulk of the amount due, appellant argued that most of the items were business equipment that he was awarded and were not intended to be returned to the Bedford Farm property now owned by Wife.

The June 16, 2015 order of the trial court set forth the items that Husband was to return to Wife. Husband did not appeal that order. That final order is binding upon Husband. He cannot now argue that he is not required to return those items to Wife or to pay for their value. Husband

cannot now argue that this court find that he has no obligation to comply with the 2015 order. *See J.S. by and ex rel. H.S. v. Bethlehem Area Sch. Dist.*, 794 A.2d 936, 939 (Pa.Cmwlth. 2002). As to the motorcycle, Husband testified that the motorcycle was customized for him, sat in a garage for ten years, and became damaged so that it was not in condition to give to Wife. (Notes of testimony, 9/8/16 at 76-77.) It is not Husband's decision whether or not Wife should receive the motorcycle. He was ordered to do so by the trial court.

Husband next contends that the trial court erred when it found that he was responsible for the payments on the First Commonwealth Bank commercial loan and that he must reimburse Wife for payments she made on the loan and that Husband must pay the remaining balance.

The September 30, 2014 order is confusing in that in Paragraph 3, the trial court stated that Wife shall assume full obligation for the First Commonwealth Bank commercial loan. In Paragraph 4, the trial court did not list a First Commonwealth Bank commercial loan in the list of loans for which Husband shall assume full obligation. Yet, in Paragraph 5, the trial court stated that Husband was to "satisfy the First Commonwealth Commercial loan within one hundred twenty (120) days." (Trial court opinion, 9/30/14 at 24, ¶ 5.) In the June 16, 2015 order, the trial court ordered Husband to pay and provide proof of satisfaction of the

First Commonwealth Bank commercial loan as set forth in the September 30, 2014 order.

Husband did not appeal the June 16, 2015 order that directed him to pay the First Commonwealth Bank commercial loan. The trial court noted in the March 13, 2017 order that the issue is decided by the doctrine of *res judicata*.

"The doctrine of *res judicata* bars repetitious litigation of the same cause of action." *Taylor v. Shiley Inc.*, 714 A.2d 1064, 1066 (Pa.Super. 1998), *appeal denied*, 735 A.2d 1270 (Pa. 1999).

> A final valid judgment upon the merits by a court of competent jurisdiction bars any future suit between the same parties or their privies on the same cause of action. The purpose of the doctrine is to minimize the judicial energy devoted to individual cases, establish certainty and respect for court judgments, and protect the party relying on the previous adjudication from vexatious litigation.

*Id.* quoting *Dempsey v. Cessna Aircraft Co.*, 653 A.2d 679, 681 (Pa.Super. 1995) (*en banc*) (internal quotation marks omitted).

> In keeping with these purposes, the doctrine must be liberally construed and applied without technical restriction. Furthermore, we note that the application of *res judicata* requires the concurrence of four conditions between the present and prior actions: 1) identity of issues; 2) identity of causes of action; 3) identity of parties or their privies; and 4) identity of the quality or capacity of the parties suing or being sued.

*Yamulla Trucking & Excavating Co., Inc. v. Justofin*, 771 A.2d 782, 784 (Pa.Super. 2001), *appeal denied*, 784 A.2d 119 (Pa. 2001).

This court agrees with the trial court that Husband had the opportunity to litigate this issue. When a final judgment was reached on the merits that he was obligated to pay the First Commonwealth commercial loan, Husband did not appeal. The litigation of this issue is barred by the doctrine of **res judicata**.

Husband next contends that the trial court erred when it sentenced him to a term of incarceration. He argues that he is unable to comply with the order and that a term of incarceration is an infliction of punishment and not a means to enforce compliance. He further argues that having him serve a term of incarceration would only further hinder his ability to comply with the orders because he would have a loss of income and possibly the loss of his business entirely as he is a sole proprietor. Husband's whole argument is centered around his belief that he lacked the ability to pay the amount ordered. As this court has already determined that the trial court did not abuse its discretion when it found that Husband did not lack the ability to pay, this issue is without merit.[2]

Wife asserts that this appeal is frivolous and intended to delay the distribution of assets to her. Pursuant to Pa.R.A.P. 2744, Wife argues that she is entitled to a remand for the purpose of determining reasonable attorney's fees to be awarded in Wife's favor and against Husband for

---

[2] Husband also contends that the trial court erred in finding that he did not make a good faith effort to sell certain properties. This court has already addressed this issue.

attorney's fees accrued on her appeal to this court.  Wife raises this argument in her discussion of Husband's failure to comply with the Pennsylvania Rules of Appellate Procedure.  Because we could render meaningful appellate review, we will not remand for attorney's fees.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/12/2017